# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., <br><br> Plaintiff, <br><br> v. <br><br> RONSHER TRANS, et al., <br><br> Defendants. | Case No. 1:23-cv-00369-ADA-SAB <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT <br><br> (ECF No. 10) <br><br> **FOURTEEN DAY DEADLINE** |

Currently before the Court is Plaintiff BMO Harris Bank N.A.'s ("Plaintiff") motion for default judgment, filed on May 12, 2023. (ECF No. 10.) No oppositions were filed and the deadline to do so has now expired. A hearing on the motion was held on June 28, 2023. (ECF No. 11.) Counsel Ken Ichi Ito appeared by videoconference for Plaintiff. No appearances were made by Defendants Ronsher Trans or Ramandeep Sandhu. (See id.) Having considered the moving papers, the declarations and exhibits attached thereto, supplemental briefing, as well as the Court's file, the Court issues the following findings and recommendations recommending Plaintiff's motion for default judgment be granted.

///

///

///

1

# I.

# BACKGROUND

### A.   Plaintiff's Allegations

The complaint asserts claims arising from breach of contract, including "counts" for injunctive relief, specific performance, claim and delivery. (Compl., ECF No. 1 at 6–11.) Plaintiff BMO Harris Bank is a national association bank which provides financing to persons and entities engaged in commercial trucking operations. (Id. at ¶¶ 4, 8.) Defendant Ronsher is a commercial trucking operation. (Id. at ¶¶ 5, 7.) Defendant Sandhu is an owner and officer of Ronsher. (Id. at ¶ 7.) Plaintiff alleges it entered into multiple agreements with Defendants in which Plaintiff agreed to finance Defendants' purchase of the following vehicles for use in Defendants' business:

- Loan and Security Agreement 6001 ("Agreement 6001"), executed on or about December 2, 2021, provides for the purchase of a 2017 Hyundai Dry Van, VIN 3H3V532C5HT325017 (the "6001 Vehicle") for the amount of $74,918.48, including interest. (Ex. 1, ECF No. 1 at 12–17.)

- Loan and Security Agreement 9001 ("Agreement 9001"), executed on or about December 16, 2021, provides for the purchase of a 2020 Utility Dry Van, VIN 1UYVS2538L3012514 (the "9001 Vehicle") for the amount of $81,130.20, including interest. (Ex. 2, ECF No. 1 at 18–23.)

- Loan and Security Agreement 0001 ("Agreement 0001"), executed on or about December 16, 2021, provides for the purchase of two 2020 Wabash Dry Vans, VINs 1JJV532D5LL174047 and 1JJV532D5LL174049 (the "0001 Vehicles") for the amount of $168,791.40, including interest. (Ex. 3, ECF No. 1 at 24–29.)

(Compl. ¶¶ 9–12, 14.)

Plaintiff alleges that, in connection with the agreements, Sandhu executed continuing guaranties on December 2, 2021, and December 16, 2021, by which Sandhu guaranteed the full and timely performance of all of Ronsher's present and future liabilities to Plaintiff. (Id. at ¶ 13; Ex. 4, ECF No. 1 at 30–33.) In consideration for entering into the agreements, Plaintiff alleges

1  Ronsher granted Plaintiff a first-priority security interest in the vehicles.  (Compl. ¶ 14.)

2  Plaintiff alleges Defendants defaulted under the agreements and guaranties by failing to
3  pay the amounts due pursuant to the agreements; specifically, Ronsher failed to make the
4  November 2, 2023 payment under Agreement 6001, the November 1, 2022 payment under
5  Agreements 9001 and 0001, and all payments due thereafter.  (Id. at ¶¶ 16, 17.)

6  Plaintiff alleges that, pursuant to the agreements, Defendants' default has resulted in the
7  entire amounts due to become accelerated.  (Id. at ¶ 18.)  Accordingly, Plaintiff asserts the
8  amounts of principal due and owing after acceleration, plus interest, late charges and other fees
9  are:

| Agreement No. | Principal | Interest accrued at time of default | Interest accrued from default to date of acceleration | Interest from daily default rates (1.5% per month, 18% per annum) or maximum legally permissible rate | Late charges |
|---|---|---|---|---|---|
| Agreement 6001 | $49,841.40 | $465.47 | $1,753.76 | $24.92 | $267.56 |
| Agreement 9001 | $55,178.41 | $493.58 | $1,875.30 | $27.59 | $270.44 |
| Agreement 0001 | $115,017.77 | $1,019.67 | $3,874.86 | $57.51 | $562.64 |

24  (Compl. ¶¶ 18–23; ECF No. 10-1 at ¶¶ 20–25.)

25  Plaintiff alleges the agreements provide Defendants must pay all expenses of retaking,
26  holding, preparing for sale, and selling of the vehicles, as well as attorneys' fees and costs
27  incurred by Plaintiff in the enforcement of its rights under the agreements.  (Compl. ¶¶ 24–25.)
28  Plaintiff noticed Defendants of their defaults and Plaintiff's election to accelerate and demand

payments via letters dated March 1, 2023.  (Id. at ¶ 26; Ex. 6, ECF No. 1 at 43–48.)  Defendants have not paid the amounts due and owing under the agreements and guaranties and Plaintiff has not been able to retake possession of the vehicles.  (Compl. ¶¶ 27–29.)

On motion for default judgment, Plaintiff indicated that, since initiating this action, it has repossessed the 2020 Utility Dry Van and the 2020 Wabash Dry Van that are the subject of Agreements 9001 and 0001.  (ECF No. 10-1 at ¶¶ 15–16.)  Plaintiff spent $10,789.67 and $6,625.00, respectively, on repossession, storage repairs, and transport fees for the identified vehicles, and seeks to recover these amounts under the agreements.  (Id. at ¶¶ 16, 26; Ex. 6, ECF No. 10-1 at 42–60 (invoices for repossession costs).)  Plaintiff asserts these vehicles are currently for sale and the net proceeds of the sales will be applied to interest, fees, costs, and then the remaining principal. (ECF No. 10-1 at ¶ 16.)  Plaintiff asserts the remaining 2017 Hyundai Dry Van and 2020 Wabash Dry Van remain in the possession of Defendants, and Plaintiff has been unable to recover the remaining vehicles, collateral, or amounts due.  (Id. at ¶¶ 17, 32.)

In addition to the aforementioned amounts, Plaintiff seeks payment for the following other fees under the agreements: Agreement 6001—$50.00 (return item fees $25.00 x 2); Agreement 9001—$25 (return item fee $25.00 x 1); and Agreement 0001—$0.00.  (Id. at ¶ 27.)  Including updated interest amounts (see ECF No. 10-1 at 8–9; Ex. 10, ECF No. 10-1 at 71–72 (payoff statement)), Plaintiff seeks the sum total of $254,346.65 for principal, interest and all fees relating to the subject vehicles under the agreements; $5,362.50 in attorneys' fees, and $550.80 in costs.  (ECF No. 10-1 at 8–9; Ex. 11, ECF No. 10-1 at 4–10.)  Plaintiff also seeks an order permitting Plaintiff to reclaim the vehicles due to Defendants' breach.  (Compl. ¶¶ 32–62.)

**B.     Procedural History**

Plaintiff initiated this action against Defendants Ronsher Trans ("Ronsher") and Ramandeep Sandhu ("Sandhu") (collectively, "Defendants") on March 10, 2023.  (ECF No. 1.)  On March 30, 2023, Plaintiff submitted executed summonses as to Defendants.  (ECF Nos. 5, 6.)  Defendants did not appear or respond in this action.  Thereafter, Plaintiff requested default be entered against Defendants.  (ECF No. 7.)  On April 13, 2023, default was entered against both Defendants.  (ECF No. 8.)

On May 12, 2023, Plaintiff filed the instant motion for default judgment. (ECF No. 10.) As noted, no opposition to Plaintiff's motion has been filed. Plaintiff appeared for the hearing on the motion on June 28, 2023, and no other appearances were made. (ECF No. 11.) The matter is deemed submitted.

## II.

## LEGAL STANDARD

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)). Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process. Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise. Fed. R. Civ. P. 55(a). After entry of default, a plaintiff can seek entry of default judgment. Fed. R. Civ. P. 55(b). Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> > (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
> >
> > > (A) conduct an accounting;
> > >
> > > (B) determine the amount of damages;
> > >
> > > (C) establish the truth of any allegation by evidence; or
> > >
> > > (D) investigate any other matter.

Fed. R. Civ. P. 55.

5

The decision to grant a motion for entry of default judgment is within the discretion of the court. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."). The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel, 782 F.2d at 1471–72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted). Finally, the relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

## III.

## DISCUSSION

Before it may evaluate the Eitel factors to determine whether default judgment should be entered, the Court must first determine whether it properly has jurisdiction in this matter.

### A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to

that granted by Congress.  U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).

A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, … and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state …."  28 U.S.C. § 1332(a)(1)–(2).  The burden of proving the amount in controversy depends on the allegations in the plaintiff's complaint.  See Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 998–1000 (9th Cir. 2007).  When the complaint alleges damages less than the jurisdictional requirement, the party seeking to establish diversity jurisdiction must prove the amount in controversy with legal certainty.  Id.; Rynearson v. Motricity, Inc., 601 F. Supp. 2d 1238, 1240 (W.D. Wash. 2009).

Here, Plaintiff asserts the amount in controversy exceeds $75,000.00, exclusive of attorneys' fees and costs.  (Compl. ¶ 1.) This is demonstrated by Plaintiff's allegations and supporting documents, which show Plaintiff seeks to recover the sum total of $254,346.65 for principal, interest and all fees relating to the subject vehicles under the agreements; $5,362.50 in attorneys' fees, and $550.80 in costs.  (ECF No. 10-1 at 8–9; Ex. 11, ECF No. 10-1 at 4–10.) Plaintiff alleges it is a citizen of the state of Illinois, and Defendants Ronsher and Sandhu are citizens of the state of California.  (Compl. ¶¶ 4–6.)  Thus, Plaintiff has established complete diversity between the parties named in the lawsuit and the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Accordingly, the Court has subject matter jurisdiction over Plaintiff's complaint based on diversity.

**B.     Jurisdiction Over Defendants**

1.     Legal Standards for Service of Process

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See J & J Sports Prods., Inc. v. Singh, No. 1:13-cv-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").

7

Service of the summons and complaint is the procedure by which a court having venue and jurisdiction of the subject matter of the suit obtains jurisdiction over the person being served. Miss. Publ'g Corp. v. Murphree, 326 U.S. 438, 444–45 (1946); see Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail), 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.").

Service of a complaint in federal court is governed by Rule 4. Pursuant to Rule 4(h), a corporation "or a partnership or other unincorporated association that is subject to suit under a common name" must be served:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant. . . .

Fed. R. Civ. P. 4(h)(1)(A)–(B).

Under Rule 4(e), an individual may be served by: (1) delivering a copy of the summons and the complaint to that person personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2).

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Direct Mail, 840 F.2d at 688 (quoting United Food & Com. Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)). However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.' " Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986)). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted). "[A] signed return of service constitutes prima facie evidence

of valid service which can be overcome only by strong and convincing evidence." SEC v. Internet Sols. for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).

### 2. Service on Defendants Ronsher Trans and Ramandeep Sandhu

The proof of service for Ronsher indicates Plaintiff personally served Ronsher's agent for service of process, Ramandeep Sandhu, with the summons and complaint at 2941 Loyola Avenue, Clovis, California 93619 on March 22, 2023 at 1:45 p.m. (ECF No. 5 at 1.) The proof of service for Sandhu indicates Plaintiff personally served Ramandeep Sandhu at the same place and time as it served Ronsher. (ECF No. 6 at 1.) On this record, the Court concludes service was properly effected on both Defendants. Internet Sols., 509 F.3d at 1163.

Based on the foregoing, the Court concludes it properly has jurisdiction over this matter.

### C.  Evaluation of the Eitel Factors in Favor of Default Judgment

For the reasons discussed herein, the Court finds that consideration of the Eitel factors weighs in favor of granting default judgment.

#### 1. Possibility of Prejudice to Plaintiff

The first factor considered is whether Plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012). Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted because, absent entry of a default judgment, Plaintiff will be without recourse against Defendant, given their unwillingness to pay the amounts due on the contract or permit Plaintiff to repossess the remaining subject vehicles. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014). This factor weighs in favor of default judgment.

#### 2. Merits of Plaintiff's Claim and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). As mentioned, the

complaint asserts a substantive claim for breach of contract.

The Court previously summarized the allegations contained in the operative complaint and supporting documents that were submitted in support of the motion for default judgment. The Court incorporates Section I here by way of reference.

Under California law, to prevail on a breach of contract claim, a plaintiff must show: (1) the existence of a contract; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) damages. See Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1399 (1990). The complaint establishes each of these elements. Plaintiff entered into loan and security agreements with Ronsher for which Sandhu executed continuing guaranties. (Compl. ¶¶ 9–13; Ex. 1–4.) Plaintiff fully performed its obligations under the agreements and guaranties by financing Ronsher's purchase of the subject vehicles. (Id. at ¶ 32.) Defendants breached the terms of the agreements and guaranties by defaulting on their payments. (Id. at ¶¶ 16–17, 27, 56.) Plaintiff's prayer for relief also sets forth its claim for contractual monetary damages, including attorneys' fees, interest, and costs. (Id. at ¶¶ 18–23, 37, 43, 54, 57, 58, 62.) Thus, the second and third Eitel factors support entry of default judgment.

3. The Sum of Money at Stake in the Action

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F Supp. 2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). The amount at stake must not be disproportionate to the harm alleged. See Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc., No. C 11-0961-CW, 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011). Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to the defendant's conduct. Truong Giang Corp. v. Twinstar Tea Corp., No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff requests contractual money damages relating to the subject vehicles under the agreements, including interest and attorneys' fees and costs where Defendants have failed to make such payments or permit Plaintiff to retrieve the remaining subject vehicles. (ECF No. 10-1 at 8–9; Ex. 11, ECF No. 10-1 at 4–10.) The bulk of Plaintiff's contractual damages consists of the

1  principal remaining on the purchase prices of the vehicles.  (See id.)  Thus, the Court finds the
2  requested contractual damages reasonable for the purposes of permitting the entry of default
3  judgment.

4        4. <u>The Possibility of a Dispute Concerning Material Facts</u>

5      The next <u>Eitel</u> factor considers the possibility of a dispute concerning material facts.  As
6  discussed previously, Plaintiff has met its burden of establishing breach of contract claims.
7  Defendants have defaulted.  Because "all allegations in a well-pleaded complaint are taken as
8  true after the court clerk enters default judgment, there is no likelihood that any genuine issue of
9  material fact exists."  <u>Elektra Entm't Group Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D. Cal.
10 2005).  Thus, taking the pleaded facts as true, the Court finds this factor favors entry
11 of default judgment.

12       5. <u>Whether the Default was Due to Excusable Neglect</u>

13     The sixth <u>Eitel</u> factor considers the possibility that a defendant's default resulted from
14 excusable neglect.  <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.  Courts have found that where a
15 defendant was "properly served with the complaint, the notice of entry of default, as well as the
16 paper in support of the [default judgment] motion," there is no evidence of excusable neglect.
17 <u>Shanghai Automation Instrument Co. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

18     The Court finds this factor weighs in favor of granting default judgment as Defendants
19 have failed to file a responsive pleading or otherwise appear in this action, despite being properly
20 served.  See id. ("The default of defendant … cannot be attributed to excusable neglect.  All were
21 properly served with the Complaint, the notice of entry of default, as well as the papers in
22 support of the instant motion.").

23       6. <u>The Strong Policy Favoring a Decision on the Merits</u>

24     "Cases should be decided upon their merits whenever reasonably possible."  <u>Eitel</u>, 782
25 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing
26 alone, is not dispositive, especially where a defendant fails to appear or defend itself in an
27 action.  <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; see also <u>Craigslist, Inc. v. Naturemarket, Inc.</u>,
28 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Accordingly, the Court finds this factor

weighs in favor of granting default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

In conclusion, the Court finds default judgment is appropriate as to both Defendants Ronsher Trans and Ramandeep Sandhu. Therefore, the Court finds Plaintiff's motion for default judgment should be granted as to each Defendant.

### D.     Requested Relief

Plaintiff seeks damages, attorneys' fees, costs, interest, and late fees on all unpaid amounts due and owing under the agreements, as well as an order permitting Plaintiff to retake possession of the unreturned vehicles.

As relevant here, each of the agreements entered into by the parties provides:

> **5.2 Remedies.**  Upon the occurrence of an event of default, … Lender may, … (i) declare this Agreement to be in default, … and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof … Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment … Debtor shall also pay to lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender.
>
> …
>
> **5.3 Acceleration Interest.**  Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 ½% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

(ECF No. 10-1 at 14, 20, 26 (emphasis in original).)

1.     Damages

A plaintiff must prove all damages sought in the complaint, and "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." Fed. R.

Civ. P. 54(c). The prevailing party in a breach of contract claim is entitled to recover "as nearly as possible the equivalent of the benefits of performance." Lisec v. United Airlines, Inc., 10 Cal. App. 4th 1500, 1503 (1992). In determining the appropriate sum for a default judgment, the court may rely on the affidavits or documentary evidence submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2); see also Philip Morris USA, Inc., 219 F.R.D. at 498. "Where damages are liquidated (*i.e.*, capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing." Microsoft Corp., 549 F. Supp. 2d at1235 (citing Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323–24 (7th Cir. 1983)).

Plaintiff seeks the following contractual damages under each agreement:

a) Loan and Security Agreement 6001, dated December 2, 2021:

| | |
|---|---|
| Principal: | $49,841.40 |
| Interest: | $3,614.75, plus $24.92 per day after April 21, 2023 |
| Late Fees: | $267.56 |
| Repossession Fees: | $0.00 |
| Return Item Fees: | $75.00 |
| **Total:** | **$53,798.71** |

b) Loan and Security Agreement 9001, dated December 16, 2021:

| | |
|---|---|
| Principal: | $55,178.41 |
| Interest: | $3,913.92, plus $27.59 per day after April 21, 2023 |
| Late Fees: | $270.44 |
| Repossession Fees: | $10,789.67 |
| Return Item Fees: | $75.00 |
| **Total:** | **$70,227.44** |

c) Loan and Security Agreement 0001, dated December 16, 2021:

| | |
|---|---|
| Principal: | $115,017.77 |
| Interest: | $8,115.09, plus $57.51 per day after April 21, 2023 |
| Late Fees: | $562.64 |

|   |   |
|---|---|
| Repossession Fees: | $6,625.00 |
| Return Item Fees: | $0.00 |
| **Total:** | **$130,320.50** |

(ECF No. 10 at 3–4; Ito Decl. ¶¶ 10–17, 20–27, 35, ECF No. 10-1 at 1–10.)

As previously discussed, Plaintiff has met its burden of establishing its breach of contract claims, which remain unchallenged by Defendants, and is thus the prevailing party in this action. Plaintiff's aforementioned damages, the amounts of which are supported by the attached agreements, receipts, and supporting declarations, result directly from Defendants' breach of contract. (See ECF No. 10-1 at 14, 20, 26; Exs. 8–10, ECF No. 10-1 at 67–72.) Because Plaintiff's request appears to be supported by the record and by the proper analysis, and Defendants have not appeared to oppose the request, the Court recommends Plaintiff be granted its contractual damages in the amount of $254,346.65.

2. <u>Judgment for Possession</u>

Plaintiff seeks a judgment for possession of the unrecovered vehicles—the 2017 Hyundai Dry Van, VIN 3H3V532C5HT325017, from the 6001 Agreement, and the 2020 Wabash Dry Van, VIN 1JJV532D5LL174049, from the 0001 Agreement—and an order directing Defendants to return and/or allow Plaintiff to take possession of these unrecovered vehicles. (ECF No. 10 at 5.) As previously noted, the parties' agreements provide that Plaintiff may take possession of the vehicles upon default. (See ECF No. 10-1 at 14, 20, 26; Exs. 8–10; Ex. 6, ECF No. 10-1 at 42–60.) Accordingly, the Court recommends Plaintiff be granted an order directing Defendants to specifically perform their obligations under the loan and security agreements to return and/or allow Plaintiff to take possession of the aforementioned vehicles.

3. <u>Attorney's Fees</u>

California follows the " American rule, " under which each party to a lawsuit must pay its own attorneys' fees unless a contract or statute or other law authorizes a fee award. Cal. Code Civ. Proc. §§ 1021, 1033.5(a)(10); <u>Musaelian v. Adams</u>, 45 Cal.4th 512, 516 (2009). California Civil Code § 1717 governs attorney fees awards authorized by contract and incurred in litigating claims sounding in contract. <u>Frog Creek Partners, LLC v. Vance Brown, Inc.</u>, 206 Cal. App. 4th

515, 523 (2012); Silverado Modjeska Recreation & Parks Dist. v. Cnty. of Orange, 197 Cal. App. 4th 282, 310 (2011). Under § 1717, when a contract provides for an award of fees "incurred to enforce that contract," "the party prevailing on the contract ... shall be entitled to reasonable attorney's fees ...." Cal. Civ. Code § 1717(a).

Here, Plaintiff seeks reasonable fees in the amount of $$5,362.50 and costs in the amount of $550.80. (Ito Decl. ¶ 35.) As noted above, Plaintiff is entitled to its fees and all other legal expenses pursuant to the parties' agreements, as previously stated. (ECF No. 10-1 at 14, 20, 26); Cal. Civ. Code § 1717. Therefore, Plaintiff is entitled to its reasonable attorneys' fees.

"[U]nder federal fee shifting statutes the lodestar approach is the guiding light in determining a reasonable fee." Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and citations omitted). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary. Second, a court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation of the lodestar. The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.

Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations and punctuation omitted).

Under the lodestar method, the Court will first determine the appropriate hourly rate for the work performed, and that amount is then multiplied by the number of hours properly expended in performing the work. Antoninetti, 643 F.3d at 1176. The district court has the discretion to adjust the number of hours claimed or the lodestar, but is required to provide a clear but concise reason for the fee award. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 896 (1984).

### a. Reasonable Hourly Rates

The fee applicant bears a burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. at 895 n.11. An applicant meets this burden by producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id.; see also Chaudhry v. City of L.A., 751 F.3d 1096, 1110–11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the prevailing market rate."). The Court may apply "rates from outside the forum ... 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.' " Barjon v. Dalton, 132 F.3d 496 (9th Cir. 1997) (quoting Gates, 987 F.2d at 1405).

Hourly rates for attorney fees awarded in the Eastern District of California range from $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years. See, e.g., Cianchetta v. BMW of N. Am., LLC, No. 2:20-cv-00241-KJM-JDP, 2022 WL 2160556, at *6 (E.D. Cal. Jun. 13, 2022) (reducing the hourly rate for attorneys in their first year of practice to $200); Seebach v. BMW of N. Am., LLC, No. 2:18-cv-00109-KJM AC, 2020 WL 4923664 at *3 (E.D. Cal. Aug. 21, 2020) (awarding the hourly rates of $200 for an attorney who had been admitted to practice less than two years, and $505 for an attorney "with roughly 20 years of experience" in 2020); Siafarikas v. Mercedez- Benz USA, LLC, No. 2:20-cv-01784-JAM-AC, 2022 WL 16926265, at *3 (E.D. Cal. Nov. 10, 2022) (approving the hourly rate of $250 for an attorney "who has practiced law for three years" and $500 for an attorney who had practiced law for 21 years).

Counsel Ken I. Ito was admitted to practice in California in 2011 and has more than 11 years of professional experience, with an emphasis in creditors' rights and business and

commercial litigation. (Ito Decl. ¶ 8.) His hourly billing rate is $275.00. (Id. at ¶ 6.) In light of the aforementioned legal authorities, the Court finds Mr. Ito's hourly rate of $275.00 is reasonable.

### b. Reasonable Attorney and Paralegal Time Expended

Mr. Ito proffers Plaintiff has incurred $3,712.50 in attorneys' fees (13.5 hours) in connection with this matter. (Id. at ¶ 5; Ex. 11, ECF No. 10-2 at 4–10.) The Court finds the time expended in this matter, as set forth in counsel's timesheets, is reasonable.

Mr. Ito further proffers an additional 4 hours to prepare the instant motion for default judgment and anticipates an additional 2 hours relating to his appearance on the motion. (Ito Decl. ¶ 7.) The Court finds the time expended on preparation of the instant motion and all supporting documents is reasonable; however, the amount of time relating to appearing on this matter must be discounted. The hearing on the instant motion lasted less than ten minutes and Mr. Ito appeared via videoconference. (See ECF No. 11.) The Court therefore finds 0.4 hours is a reasonable amount of time expended on preparing for and appearing at the hearing on Plaintiff's motion for default judgment. Accordingly, the Court finds Mr. Ito reasonably expended an additional 4.4 hours related to the instant motion for default judgment, for an additional total of $1,210.00.

Based on the foregoing, the Court recommends Plaintiff be awarded 17.9 hours of attorney time (x $275.00 hourly rate), for a total reasonable fees amount of $4,922.50.

### 4. Litigation Expenses and Costs

Plaintiff seeks a total of $550.80 in costs, which consists of the filing fee and service of process. (Ito Decl. ¶ 9.) Plaintiff's costs are also permitted pursuant to the parties agreements. (ECF No. 10-1 at 14, 20, 26.) Further, the costs are reasonable. See 42 U.S.C. § 12205; Lovell, 303 F.3d at 1058. Accordingly, the Court recommends Plaintiff be awarded its costs in the amount of $550.80

### IV.

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff BMO Harris Bank N.A.'s motion for default judgment (ECF No. 10) be GRANTED, as follows:

2. Default judgment be ENTERED in favor of Plaintiff BMO Harris Bank N.A. against Defendants Ronsher Trans and Ramandeep Sandhu, jointly and severally, in the amount of $259,819.95, which consists of:

   a) Principal:          $220,037.58
   b) Interest:           $15,643.76
   c) Late Fees:          $1,100.64
   d) Repossession Fees:  $17,414.67
   e) Return Item Fees:   $150.00
   f) Attorneys' Fees:    $4,922.50
   g) Costs:              $550.80

3. Plaintiff be AWARDED possession of the following unrecovered vehicles, and Defendants be DIRECTED to specifically perform their obligations under the loan and security agreements to return and/or allow Plaintiff to take possession of the vehicles:

   a) 2017 Hyundai Dry Van, VIN 3H3V532C5HT325017 (pursuant to the 6001 Agreement); and
   b) 2020 Wabash Dry Van, VIN 1JJV532D5LL174049 (pursuant to the 0001 Agreement); and

4. Upon recovery and sale of the identified vehicles in a commercially reasonable manner, the money judgment entered herein be credited with the net sales proceeds.

Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the Defendants at that Defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these

findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **June 28, 2023**

UNITED STATES MAGISTRATE JUDGE